IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY,<br><br>*Plaintiff,*<br><br>v.<br><br>STEPHANIE TOMASIC,<br><br>*Defendant.* | Civil Action No. 2:25-cv-418<br><br>Hon. William S. Stickman IV |

**MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

On March 26, 2025, Plaintiff/Counterdefendant Allstate Fire and Casualty Insurance Company ("Allstate") filed a Complaint in Declaratory Judgment (ECF No. 1) against Defendant/Counterclaimant Stephanie Tomasic ("Tomasic"). Tomasic answered that complaint (ECF No. 11), and then filed a Motion for Judgment on the Pleadings (ECF No. 20). Allstate also filed a Motion for Judgment on the Pleadings. (ECF No. 22). For the following reasons, Tomasic's motion will be granted and Allstate's motion will be denied.

## I.   FACTUAL BACKGROUND

On August 24, 2023, Tomasic was involved in a motor vehicle accident. She was a passenger in a wheelchair-accessible Ford van ("Ford van") owned by her employer, Sherwood Oaks. (ECF No. 1, ¶¶ 8-9). Tomasic was a home care aide at Sherwood Oaks, a retirement community in Cranberry Township, Pennsylvania. (*Id.*). Her duties included being a "rider," i.e., accompanying residents when they traveled off-site by vehicle. (*Id.* at ¶ 11). She was permitted to drive her own vehicle, ride in a resident's vehicle, or ride in one of six vehicles owned by

1

Sherwood Oaks (including the Ford van). (*Id.* at ¶¶ 12, 15). Approximately once per month, she rode in the Ford van to accompany a wheelchair-bound resident. (*Id.* at ¶ 15–16). Tomasic was not authorized to drive the Ford van, and its keys were securely kept in the Sherwood Oaks security office. (*Id.* at ¶¶ 14, 17). Before serving as a rider in any vehicle, Tomasic had to complete and submit documentary paperwork to her supervisor that detailed the date, time, and location of the trip, as well as the vehicle used and the who person authorized it. (*Id.* at ¶ 23). It was customary that a rider would be requested for a wheelchair-bound resident who could not be accompanied by a friend or family member. (*Id.* at ¶ 26). On the day of the accident, Tomasic rode with a resident at the request of Sherwood Oaks security. (*Id.* at ¶¶ 26–28).

At the time of the accident, Tomasic maintained a personal automobile insurance policy from Allstate bearing policy number 998 727 073. (*Id.* at ¶¶ 5–8). That policy covered her and her husband, and it provided $100,000 of underinsured motorist ("UIM") coverage per person. (*Id.* at ¶ 6). Stacked for two vehicles, the policy's UIM coverage limits were $200,000 per person. (*Id.*). After the accident, Tomasic submitted a claim for UIM benefits under her policy. (*Id.* at ¶ 35). It contained a "Regular Use" exclusion, which read as follows: "Allstate will not pay any damages an insured person is legally entitled to recover because of … bodily injury to you or a resident relative while in, on, getting into or out of or when struck by a non-owned motor vehicle not insured for [UIM] coverage under this policy if that non-owned motor vehicle is available for the regular use of you or a resident relative." (*Id.* at ¶ 37). Because of that exclusion, Allstate filed its Complaint in Declaratory Judgment (ECF No. 1) to preclude Tomasic's claim for UIM benefits. (*Id.* at ¶ 43).

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) ("Rule 12(c)") provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c).  Judgment is granted only when the moving party establishes that there are no material issues of fact and that it is entitled to judgment as a matter of law. *Sherzer v. Homestar Mortg. Servs.*, 707 F.3d 255, 257 (3d Cir. 2013) (citing *Allstate Prop. & Cas. Ins. v. Squires*, 667 F.3d 388, 390 (3d Cir. 2012)).  A court can rule that a party is entitled to judgment under Rule 12(c) *sua sponte* or upon motion.  *See Murray v. Silberstein*, 882 F.2d 61, 64 (3d Cir. 1989).

The primary distinction between motions under Federal Rule of Civil Procedure 12(b)(6) and Rule 12(c) is timing:  if a motion is filed before an answer, it is a motion to dismiss; if after, it is a motion for judgment on the pleadings. *In re Brizinova*, 592 B.R. 459 (E.D.N.Y. 2018).  This distinction is merely semantic because the same standard of review generally applies to both. *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991); 2 James Wm. Moore et al., Moore's Fed. Prac. § 12.38 (3d ed. 1997).  The critical difference between motions to dismiss and motions for judgment on the pleadings is not the standard of a court's review, but its scope.  Unlike motions to dismiss, a court reviewing a motion for judgment on the pleadings considers not only the complaint but also the written answer and attachments to the pleadings.  *Compare In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." (citation omitted)), *with Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) ("It would seem to follow that if an attachment to an answer is a 'written instrument,' it is part of the pleadings and can be considered on a Rule 12(c) motion for judgment on the pleadings without the motion being converted to one for summary judgment."), *and Ferencz v. Medlock*, 905 F. Supp. 2d 656, 663

3

(W.D. Pa. 2012) ("The only notable difference is that a court, for a motion on the pleadings, may review not only the complaint but also the answer and written instruments attached to the pleadings." (citing *Brautigam v. Fraley*, 684 F. Supp. 2d 589, 591–92 (M.D. Pa. 2010)).[1] A court should consider the allegations in the pleadings, the exhibits attached thereto, matters of public record, and "undisputedly authentic" documents if the plaintiff's claims are based on such documents. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993); *see also Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 256 n.5 (3d Cir. 2004) (providing that a court may consider (1) exhibits attached to the complaint, (2) matters of public record, and (3) all documents that are integral to or explicitly relied upon in the complaint, even if they are not attached thereto, without converting the motion into one for summary judgment). However, because a Rule 12(c) "motion calls for an assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom" in the nonmovant's favor. *R.G. Fin. Corp. v. Vergara-Nunez*, 446 F.3d 178, 182 (1st Cir. 2006).

When a Rule 12(c) motion is not used to raise Rule 12(b) defenses, judgment on the pleadings under Rule 12(c) is not appropriate "'unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'" *CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 193 (3d Cir. 1999) (quoting *Kruzits v. Okuma Machine Tool, Inc.*, 40 F.3d 52, 54 (3d Cir. 1994)). Motions under Rule 12(c) that are not used to raise certain Rule 12(b) defenses require a determination on the merits of the case and "should be granted only where it is clear that the merits of the controversy can be fairly and fully

---

[1] When reviewing a motion to dismiss, a court may only review attachments to a complaint if they are integral to a plaintiff's allegations and are authentic. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426 (citing cases).

decided in such a summary manner." *In re Dreyfus Mut. Funds Fee Litig.*, 428 F. Supp. 2d 357, 358 (W.D. Pa. 2006).

### III.    ANALYSIS

Whether a vehicle is excluded from coverage under the regular use exception is usually a question for a jury, but the Court may decide the issue as a matter of law when the relevant facts are not in dispute. *Liberty Mut. Ins. Co. v. Sweeney*, 689 F.3d 288, 296 (3d Cir. 2012) (citing *Crum and Forster Pers. Ins. Co. v. Travelers Corp.*, 631 A.2d 671, 673 (Pa. Super. 1993)). Here, the relevant facts are not in dispute, and the parties only contest whether the regular use exclusion in the policy precludes Tomasic's recovery of UIM benefits. (ECF No. 21, p. 3); (ECF No. 23, p. 2). Tomasic asserts that her use of the Ford van, a fleet vehicle, was infrequent and conditional. She argues that this does not rise to regular use, and that she can recover UIM benefits under Pennsylvania law. (ECF No. 21, p. 7). Allstate counters, arguing that because Tomasic always rode in the Ford van when she was a rider with wheelchair-bound residents, it was available for her regular use. (ECF No. 23, p. 11).

Under Pennsylvania law, "the interpretation of an insurance contract regarding the existence or non-existence of coverage is generally performed by the court." *Gardner v. State Farm Fire & Cas. Co.*, 544 F.3d 553, 558 (3d Cir. 2008) (quoting *Minnesota Fire and Cas. Co. v. Greenfield*, 855 A.2d 854, 861 (2004)).[2] Pennsylvania requires its courts to examine the applicable provisions of the insurance policy to ascertain the intent of the parties and determine coverage. *Gallagher v. GEICO Indem. Co.*, 201 A.3d 131, 137 (Pa. 2019) (*citing* 401 Fourth St., *Inc. v. Inv'rs Ins.*, 879 A.2d 166, 171 (Pa. 1999)). "[W]hen the language of the policy is clear and unambiguous,

---

[2] The auto policy at issue states that Pennsylvania law applies (ECF No. 1-3, p. 27), and the parties do not dispute that Pennsylvania law applies.

5

a court is required to give effect to that language." *Id.* at 137 (citing *401 Fourth St., Inc.*, 879 A.2d at 171) (internal quotation marks omitted). When the language is ambiguous, however, courts must construe it "in favor of the insured and against the insurer, the drafter of the agreement." *Prudential Prop. & Cas. Ins. v. Sartno*, 903 A.2d 1170, 1177 (Pa. 2006) (citation omitted). Words or provisions are ambiguous "if they are subject to more than one reasonable interpretation when applied to a particular set of facts." *Kurach v. Truck Ins. Exch.*, 235 A.3d 1106, 1116 (citing *Madison Constr. Co. v. Harleysville Mut. Ins.*, 735 A.2d 100, 106 (Pa. 1999)). "A word is not ambiguous, however, simply because it is undefined." *Greenwood Racing Inc. v. Am. Guar. & Liab. Ins.*, No. 21-1682, 2022 WL 4133295, at *3 (E.D. Pa. Sept. 12, 2022) (citing *Gemini Ins. v. Meyer Jabara Hotels LLC*, 231 A.3d 839, 849 (Pa. Super. 2020)).

The regular use exclusion contained in Tomasic's policy states:

> Allstate will not pay any damages an insured person is legally entitled to recover because of … bodily injury to you or a resident relative while in, on, getting into or out of or when struck by a non-owned motor vehicle not insured for [UIM] coverage under this policy if that non-owned motor vehicle is available for the regular use of you or a resident relative.

(ECF No. 1, ¶ 37; ECF No. 1-3, p. 38). An unambiguous regular use exclusion must be given its ordinary meaning. *Crum and Forster Pers. Ins. Co.*, 631 A.2d at 673 (citations omitted). The Court holds that the plain text of Tomasic's policy excludes UIM coverage for a regularly used, non-owned vehicle.

An employee's level of access to a vehicle determines whether the regular use exclusion applies or not. Regular use of a vehicle is "principal" or "habitual," not "occasional" or "incidental." *Liberty Mut. Ins. Co.*, 689 F.3d at 296 (citing *Crum and Forster Personal Ins. Co.*, 631 A.2d at 673). Courts have held that the regular use exclusion applies in cases where a vehicle was readily obtainable and frequently used. *See e.g. Reeves v. Travelers Cos.*, 296 F.Supp.3d 687,

6

691–692 (E.D. Pa. 2017) (plaintiff rode in city-owned vehicles on at least 90% of his workdays); *Prudential Prop. & Cas. Ins. Co. v. Hinson*, F.Supp.2d 468, 475 (E.D. Pa. 2003) (driver used township-owned police vehicles for twenty to forty hours per month over approximately six years); *Crum & Forster Pers. Ins. Co.*, 631 A.2d at 674 (on average, family member of insured drove vehicle five times per week for four years). And at least one court has posited important indicia of regular use, including "blanket permission to use the car rather than having to request permission each time" and "an available set of keys." *Liberty Mut. Ins. Co.*, 689 F.3d at 297 (citing *Nationwide Mut. Ins. Co. v. Shoemaker*, 965 F.Supp. 700, 706 (E.D. Pa. 1997), *aff'd*, 149 F.3d 165 (3d Cir. 1998)). The regular use exclusion is also not confined to a specific vehicle–it may apply where an employee has access to a fleet of them. *Brink v. Erie Ins. Grp.*, 940 A.2d 528, 535 (Pa. Super. 2008).

However, when someone has limited access to a fleet of vehicles, and absent any indicia of habitual use or any understanding that he may have general access to them, the regular use exclusion does not apply. *Liberty Mut. Ins. Co.*, 689 F.3d at 296–297. Pennsylvania courts have held that it would be unreasonable under Pennsylvania law to expect an insured to pay a premium for limited, conditional, and infrequent use of a vehicle. *Id.* (citing *Burstein v. Prudential Prop. & Cas. Ins. Co.*, 809 A.2d 204, 208–209 (Pa. 2002)). Therefore, an insurance policy covers an insured during infrequent and casual use of a non-owned vehicle. *Brink*, 940 A.2d at 532 (quoting *Crum & Forster Per. Ins. Co.*, 631 A.2d at 673).

Here, Tomasic rode in the Ford van approximately once a month and was not authorized to drive it. (ECF No. 1, ¶ 15–16). Like all vehicles owned by Sherwood Oaks, the keys to the Ford van were kept in the security office and the van was generally kept near it. (*Id.* at ¶¶ 13–14). Sherwood Oaks security was required to approve any off-campus transportation of a resident, and

it generally took about 24–48 hours to schedule a vehicle. (ECF No. 11, ¶¶ 48–49). Sherwood Oaks' policy also required that a wheelchair-bound resident be accompanied by a friend, family member, or a rider. Tomasic's department was typically contacted with a rider request if a friend or family member was unavailable. (ECF No. 1, ¶ 26–27). Tomasic was authorized to drive or ride in other Sherwood Oaks vehicles, but those occasions still required pre-authorization and documentation. (*Id.* at ¶ 23).

Based on the pleadings before the Court, Tomasic did not have regular use of either the Ford van or Sherwood Oaks' broader fleet of vehicles. She was not the primary driver of any of those vehicles, nor did her daily tasks include driving them. When she did drive a vehicle or serve as a rider, those occasions were limited, infrequent, and subject to preauthorization. Tomasic lacked ready access to those vehicles or the keys necessary to drive them. Further, when she was a rider for wheelchair-bound residents in the Ford van, such outings usually occurred no more than once a month. Even then, she typically performed that duty only in the absence of a resident's friend or family member. These facts most closely resemble those in *Liberty Mut. Ins. Co.*, where the United States Court of Appeals for the Third Circuit held that an informal, *ad hoc*, once-or-twice per month car rental arrangement was insufficient to trigger the regular use exclusion. *Liberty Mut. Ins. Co.*, 689 F.3d at 290–291. That is also the case here. Tomasic's use of Sherwood Oaks vehicles was not habitual as a driver or rider, nor was that use subject to any general understanding that she had ready access to them. To the contrary, her use was so limited as to be irregular by nature. Accordingly, the regular use exclusion found in her Allstate policy does not apply. Tomasic is entitled to UIM coverage for the August 24, 2023, accident.

## IV. CONCLUSION

Based on the foregoing, no material dispute of fact exists and Tomasic is entitled to judgment on the pleadings. Tomasic's motion (ECF No. 20) will be granted and Allstate's motion will be denied (ECF No. 22). Judgment will be entered in favor of Tomasic. Orders of Court will follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

__11/12/25_____
Dated